AO 91 (Rev. 12/03) Criminal Complaint

# United States District Court

EASTERN District of CALIFORNIA

FILED
FEB 16 2011
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

UNITED STATES OF AMERICA
V.

**CRIMINAL COMPLAINT**

Case Number: 2:11-MJ-0051 KJN

Cosme RODRIGUEZ – DOB: 03-04-1973; and
Maria HERNANDEZ – DOB: 04-29-1983;
(Name and Address of Defendant)

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about February 15, 2011 (Date) in Colusa County, in the EASTERN District of CALIFORNIA defendant(s) did,

*(Track Statutory Language of Offense)*
Possess with the intent to distribute at least 500 grams of mixture and substance containing a detectable amount of methamphetamine.

in violation of Title 21 United States Code, Section (s) 841(a)(1)
I further state that I am a(n) Drug Enforcement Administration Special Agent (Official Title) and that this complaint is based on the following facts:

Please see the attached AFFIDAVIT, which is hereby incorporated and made part of this complaint.

Continued on the attached sheet and made a part hereof. ☒ Yes ☐ No

Signature of Complainant

Christopher DeFreece, Special Agent, DEA
Printed Name of Complainant

Sworn to before me and subscribed in my presence,

February 16, 2011 at Sacramento, CA
Date City State

Hon. Kendall J. Newman, U.S. Magistrate Judge
Name of Judge Title of Judge

Signature of Judge

AUSA Daniel S. McConkie, 916-554-2725

**AFFIDAVIT OF SPECIAL AGENT CHRISTOPHER DEFREECE**

I, Christopher DeFreece, Special Agent, United States Department of Justice, Drug Enforcement Administration (DEA), being duly sworn, do depose and state:

1. I am a Special Agent with the U.S. Drug Enforcement Administration (DEA) and have been employed since 1988. I was trained as a DEA Special Agent at the DEA/FBI Academy, Quantico, Virginia. During my training, I received specialized instruction in the Controlled Substance Act, Title 21 United States Code, including but not limited to Sections 841 (a)(1) and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations, respectively. I have received specialized training regarding criminal organizations engaged in conspiracies to manufacture and/or possess with the intent to distribute cocaine, cocaine base, heroin, methamphetamine, marijuana and other dangerous drugs prohibited by law. I have received further training in search and seizure law and many other facets of drug law enforcement. During the course of my employment as a DEA Special Agent, I have participated in numerous criminal investigations, and have gained knowledge and experience by working with other Special Agents and police officers. I have participated in numerous Federal and State search

warrants involving the aforementioned listed controlled substances, the seizure of narcotic related records and other types of evidence that document the activities of criminal organizations in both the manufacturing and distribution of controlled substances. To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance and various types of infiltration, including undercover agents, informants and cooperating sources. Through these investigations, my training and experience, and conversations with other experienced agents and law enforcement personnel, I have become familiar with the methods used by traffickers to smuggle and safeguard narcotics, to distribute narcotics, and to collect and launder related proceeds.

2. The information contained in this affidavit is based upon my personal observations, observations of other law enforcement officers, my review of official police and government reports, and consultation with other agents and officers involved in the investigation. Because this affidavit is being submitted for the limited purpose of obtaining arrest warrants and a complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I

believe are necessary and appropriate to establish the appropriate foundation for the issuances of arrest warrants and a complaint.

3. This affidavit is submitted in support of a request that a complaint and arrest warrants be issued for the following persons:

Cosme RODRIGUEZ - DOB: 03-04-1973; and

Maria HERNANDEZ - DOB: 04-29-1983;

for violations of Title 21 United States Code, Section 841(a)(1), possession with the intent to distribute at least 500 grams of mixture and substance containing a detectable amount of methamphetamine.

**STATEMENT OF PROBABLE CAUSE**

4. On January 31, 2011, your affiant participated along with other officers and agents in a buy/bust operation where he observed a DEA Confidential Source ("CS") and under the direction and surveillance of law enforcement, meet with a Maria HERNANDEZ and an unknown Hispanic male adult (identified on February 15, 2011 as Cosme RODRIGUEZ). The purpose of the meeting was for the CS, under the direction of law enforcement, to attempt to purchase ten pounds of methamphetamine from HERNANDEZ and RODRIGUEZ. This meeting took place in the McDonald's parking lot located at 475 4th Street, Williams, California (in the

Eastern District of California). Prior to this meeting, the CS had several telephone conversations with HERNANDEZ where they spoke of the details of the impending purchase.

5. Your affiant also observed that when HERNANDEZ arrived with RODRIGUEZ to the parking lot, they had arrived in a White Ford van, California license plate 6P43242. Later your affiant conducted a database check with the California Department of Motor Vehicles and learned that the registered owner to that vehicle was listed as Cosme RODRIGUEZ. At the time your affiant was not able to locate any further information on RODRIGUEZ.

6. For the next several hours your affiant observed HERNANDEZ and the RODRIGUEZ attempt to locate methamphetamine to sell to the CS. Both HERNANDEZ and RODRIGUEZ, who were traveling together in the white van, were followed by law enforcement to several different locations but were not observed meeting with anyone. As they were traveling around, HERNANDEZ and RODRIGUEZ kept in telephone contact with the CS telling the CS that they were coming back to complete the transaction. After several hours, the CS told HERNANDEZ and RODRIGUEZ that the CS was tired of waiting and was leaving and that they would have to complete the transaction on another day. HERNANDEZ told

the CS that the sources they had thought would provide the methamphetamine would not travel to the Williams area.

7. Your affiant knows that during the next couple of weeks following the first meeting, the CS had several telephone conversations with HERNANDEZ. In these conversations, HERNANDEZ told the CS that they would be ready to sell the methamphetamine the next time the CS came down. The CS and HERNANDEZ agreed to meet again on February 15, 2011. They also agreed that HERNANDEZ would sell the CS twelve pounds of methamphetamine for $16,500 per pound for a total price of $198,000.

8. On February 15, 2011, your affiant, along with other officers and agents again conducted a buy/bust operation of HERNANDEZ and RODRIGUEZ. At approximately noon, agents and officers established surveillance around the CS in the parking lot of Granzella's Restaurant in Williams, California. The CS then placed a telephone call to HERNANDEZ, who stated to the CS that she was in Arbuckle, California and was leaving to travel to Dunnigan, California to go pick up the methamphetamine. At approximately 12:32 p.m., the CS placed another telephone call to HERNANDEZ who stated that she was in Dunnigan picking up the methamphetamine and would be arriving at the CS's location in twenty minutes.

9. At approximately 1 p.m., HERNANDEZ telephoned the CS and stated that she had the methamphetamine in her vehicle and was on her way up to see the CS. During this call, HERNANDEZ attempted to get the CS to come to her location to make the purchase. The CS refused to leave Williams telling HERNANDEZ that she needed to come up there. At approximately 1:14 p.m., the CS received a telephone call from HERNANDEZ'S telephone however a male was on the phone instead of Hernandez. The CS recognized the voice to be of the unknown male the CS had met with previously during the first attempted transaction (RODRIGUEZ). During this telephone call, RODRIGUEZ told the CS to come down to his house to complete the deal. The CS told RODRIGUEZ to bring the methamphetamine to the CS's location and after the CS had seen the methamphetamine they could go back to RODRIGUEZ's residence to complete the transaction. RODRIGUEZ told the CS that they would come up to talk to the CS. At approximately 1:28 p.m., the CS called HERNANDEZ who stated that they were five minutes away.

10. At approximately 1:39 p.m., your affiant observed a small red sedan arrive into the parking lot where it parked next to the CS. Surveillance agents then observed HERNANDEZ and RODRIGUEZ exit the sedan and meet with the CS. (Surveillance agents also observed that RODRIGUEZ

matched the description of the unknown HMA from the first meeting on January 31, 2011.) According to the CS, RODRIGUEZ asked the CS if they could leave the area and go to his residence. The CS told RODRIGUEZ that the CS just wanted to see the methamphetamine first before the CS went anywhere. RODRIGUEZ then showed the CS a small plastic baggie containing a white substance which looked like methamphetamine to the CS. Both HERNADEZ and RODRIGUEZ then went to the trunk of the vehicle with the CS. RODRIGUEZ then showed the CS several wrapped packages which were contained inside a speaker box in the trunk of the vehicle. After seeing the wrapped packages, HERNANDEZ stated to the CS, "everything is good, it's okay". The CS after seeing the wrapped packages then gave the pre-arranged arrest signal and HERNANDEZ and RODRIGUEZ were taken into custody without further incident.

11. Immediately after the arrest, agents located five wrapped packages of approximately the same size hidden inside the speaker box contained in the trunk. A presumptive field test was conducted on one of the packages which tested positive for the presence of methamphetamine. Later SA Dennis Hale weighed the five packages obtaining a gross field weight (which includes the packaging) of 3,472 grams. Also located during a subsequent search of the

vehicle was a small plastic baggie containing suspected methamphetamine. This baggie was located on the passenger's side floorboard and is believed to be the baggie that RODRIGUEZ showed the CS. During a search of HERNANDEZ'S purse an additional small plastic baggie of suspected methamphetamine was also located and seized.

12. Once the subjects were arrested, they were then transported to the Williams Police Department. While there, the unknown male was identified as Cosme RODRIGUEZ, who resides at 1594 County Road 88, Dunnigan, California. This is the same name which matched the registered owner of the white van previously observed by agents.

13. RODRIGUEZ was advised of his Miranda rights by SA Jacob Gilliam. After agreeing to speak to agents, RODRIGUEZ stated that he does own a white van. RODRIGUEZ further admitted to agents that he was delivering the methamphetamine to "that guy" (the CS). However, RODRIGUEZ did not tell agents where he had obtained the methamphetamine, only stating that it was dropped off at his house by unknown individuals in an unknown vehicle. RODRIGUEZ further stated that he thinks the unknown individuals observed the arrest as they were going to follow RODRIGUEZ up to Williams in their own vehicle to collect their money. RODRIGUEZ stated he was to be paid

for transporting the methamphetamine but did not state how much he was to be paid.

14. Maria HERNANDEZ was then advised of her Miranda rights by SA Gilliam. HERNANDEZ agreed to speak to agents as well. HERNANDEZ admitted to agents that she knew they were delivering methamphetamine. HERNANDEZ stated that she did not know where the methamphetamine came from and that RODRIGUEZ had gotten it from some people from Stockton. RODRIGUEZ stated that she had introduced the guy buying (the CS) the methamphetamine to RODRIGUEZ. HERNANDEZ further stated that they had previously met the guy but could not get any methamphetamine for him at that time. HERNANDEZ stated that she and RODRIGUEZ were to receive $7,000 dollars to share once they were paid for the methamphetamine. HERNANDEZ stated that she has gotten small amounts of dope from RODRIGUEZ in the past. After the interviews of HERNANDEZ and RODRIGUEZ they were then transported to the Colusa County Jail pending transfer to the custody of the United States Marshal's Service.

15. Based upon the above information, your affiant believes that there is probable cause to believe that Cosme RODRIGUEZ and Maria HERNANDEZ have violated Title 21 United States Code, Section 841 (a) (1), possession with the intent to distribute at least 500 grams of mixture and

substance containing a detectable amount of methamphetamine.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Christopher DeFreece, Special Agent
Drug Enforcement Administration

Approved as to form:

Daniel S. McConkie
Assistant United States Attorney

Subscribed and sworn to before me
This 16th day of February, 2010

Honorable Kendall J. Newman
United States Magistrate Judge